JOINER *v.* SORRELS.

Opinion delivered January 7, 1929.

*Henry Stevens,* for appellant.

*McKay & Smith,* for appellee.

MEHAFFY, J. The appellees brought suit, alleging that they were the owners of the northeast quarter of section 28, township 18 south, range 22 west, in Columbia County, Arkansas, and that they were informed that the appellant, Joe Joiner, claimed some interest in said land, and asked that the deeds by which the appellant claimed title be canceled as a cloud on appellee's title, and that appellee's title be quieted and confirmed against the appellants.

Appellees deraigned title to said lands as follows: That the said lands were patented to the State of Arkansas as swamp land, and conveyed by the State of Arkansas to certain parties, and that afterwards said land was forfeited for the nonpayment of taxes, and that the State thereby acquired title, and that in March, 1884, the State issued to George Crouch a donation certificate, and afterwards, on August 29, 1885, issued to the said George Crouch a donation deed.

Appellees alleged that George Couch went into possession of said land, and improved the same, and commenced paying taxes thereon; that he continued in the exclusive, open and adverse possession of said lands, paying the taxes thereon each year, until his death in 1899. The said George Couch died intestate, the owner and in possession of said lands. And the administrator of

Crouch's estate, under order of the probate court, sold said lands to Emerson and Davies, and, after the sale had been confirmed by the court, the administrator made a deed to Emerson and Davies. Emerson thereafter died, leaving his interest in said property to Sarai Emerson, Alice Emerson Sorrels and Donan Emerson Thomas, and that the appellees, through these conveyances, became the owners of the property described.

The appellant filed answer, denying that plaintiffs were the owners of the property, and denying the possession of Crouch—in fact, denying all the material allegations of plaintiff's complaint, and alleged that he was the owner in fee simple of said land by virtue of deeds from A. J. Marsh, to whom it had been conveyed by T. E. Wilson, and that Wilson claimed under a donation deed from the State. The parties entered into a stipulation, agreeing to the following facts:

"AGREED STATEMENT OF FACTS.

"The plaintiffs and the defendant in the above styled cause, by their respective attorneys, hereby agree that the following facts may be considered as evidence upon the trial of the above styled cause:

"(1) The lands in controversy were patented to the State of Arkansas by the United States as swamp land. (2) In 1857 the State of Arkansas conveyed the southwest quarter of northeast quarter of section 28, township 18 south, range 22 west, to William H. Key. (3) In 1857 the northwest quarter of section 28, township 18 south, range 22 west, was entered from the State of Arkansas by Perry G. Key, but no patent was ever issued thereon. (4) In 1860 the State of Arkansas patented the east half of northeast quarter of section 28, township 18 south, range 22 west, to N. T. McAlister. (5) All the lands in controversy forfeited for nonpayment of taxes for the year 1868, and said forfeiture was duly certified to the State, as required by law. (6) That on March 8, 1884, the State of Arkansas issued to George Crouch a donation certificate covering all the above

described lands. (7) That on the 29th day of August, 1885, Paul M. Cobbs, as Commissioner of State Lands, executed and delivered to George Crouch a deed covering lands in controversy, which deed was recorded on the 23d day of September, 1885, and appears of record in record book P, at pages 15 and 16 of the deed records of Columbia County, Arkansas, a copy of which is hereto attached, marked Exhibit A, and made a part hereof. (8) That George W. Crouch died intestate, and W. W. Souter was duly appointed administrator of his estate by the probate court of Columbia County, Arkansas. (9) The probate court of Columbia County, Arkansas, entered an order authorizing W. W. Souter, as such administrator of the estate of George W. Crouch, deceased, to sell the lands in controversy belonging to the estate of George W. Crouch, a copy of which order is hereto attached, marked Exhibit B, and made a part hereof. (10) That W. W. Souter, as such administrator, reported the sale of said lands to the probate court of Columbia County, Arkansas, and said court entered an order purporting to confirm the same, which was entered of record, which is hereto attached, marked Exhibit C and made a part hereof. (11) That W. W. Souter, as such administrator of the estate of George W. Crouch, deceased, executed his deed to R. L. Emerson and A. W. Davies, purchasers of said lands, which deed is recorded in record book W, at pages 263-264 of the records of Columbia County, Arkansas, a copy of which is hereto attached, marked Exhibit D, and made a part hereof. (12) That R. L. Emerson died testate, and that by the terms of his will Alice Emerson Sorrels and Donan Emerson Thomas, by virtue of said will, became the owners of whatever interest R. L. Emerson might have had in the above described lands; that both Alice Emerson Sorrels and Donan Emerson Thomas are dead; that Alice Emerson Sorrels died testate, and that W. W. Sorrels is the owner of whatever interest she might have held in said lands at the time of her death; that Donan Emerson Thomas died

intestate and solvent, and that Sarai Rosalie Thomas, Riley Emerson Thomas and Mabel Louise Thomas, minors, her sole and only children, are now the owners of whatever interest Donan Emerson Thomas may have owned in said lands at the time of her death, and that S. R. Thomas is the duly qualified and acting guardian of said minors. (13) That taxes have been paid on said lands by the person shown in statement hereto attached, marked Exhibit E, and made a part hereof. (14) It is agreed that the only suit under the overdue tax act of 1881 in which the lands in controversy were included in the warning order entered of record by the clerk, or in any decree of foreclosure, is a certain case No. 241, which is styled 'The State of Arkansas, on relation of W. H. Arnold, v. the northwest quarter of the southwest quarter of section 4, township 16 south, range 18 west, and other lands,' upon which taxes are due and unpaid. (15) That chancery records, volumes B and C of the chancery records of Columbia County, Arkansas, contain all orders made and entered of record by the circuit court in chancery sitting in Columbia County, Arkansas, from 1860 to November 4, 1894, and that the only orders in the above styled cause appearing of record are as follows:

" 'No. 1. Page 490, volume B, dated June 2, 1882, attached hereto and marked Exhibit 1. No. 2. Page 571, volume B, dated June 13, 1883, attached hereto, and marked Exhibit 2. No. 3. Page 22, volume C, dated September 11, 1883, attached hereto, and marked Exhibit 3. No. 4. Page 62, volume C, dated March 6, 1884, attached hereto, and marked Exhibit 4. No. 5. Page 64, volume C, dated March 6, 1884, attached hereto, and marked Exhibit 5.'

"(15-A) That there is hereto attached copy of chancery court docket D, page 121, marked Exhibit E-1. (16) That there is hereto attached, marked Exhibit F, copy of an instrument appearing of record in book labeled 'Lands Sold to State and Individuals, 1859-83,' pages

225-246, county clerk's office. (17) That there is hereto attached certificates of Herbert E. Wilson, Commissioner of State Lands, dated March 17, 1926, marked Exhibit G, and that this certificate covers the only instrument on file or of record in the State Land Office purporting to show any disposition of the lands in controversy in the overdue tax suit. (17-A). That there is hereto attached statement issued by the State Land Office, dated June 17, 1924, marked Exhibit G-A. (18) That on the 15th day of November, 1919, William B. Owens, Commissioner of State Lands, executed and delivered to T. E. Wilson a deed covering the lands in controversy, which deed was recorded on the 6th day of December, 1919, and appears of record in record book 47, at pages 105-106 of the deed records of Columbia County, Arkansas, a copy of which is hereto attached, marked Exhibit H, and made a part hereof. (19) That on the............day of.................., ..........., T. E. Wilson executed a quitclaim deed to A. J. Marsh, which deed was recorded on the............day of .........................., ..........., and appears of record in record book ...............at page...............of the deed records of Columbia County, Arkansas, a copy of which is hereto attached, and marked Exhibit I, and made a part hereof. (20) That on the 29th day of April, 1922, A. J. Marsh executed a quitclaim deed to Joe Joiner, covering the east half of northeast quarter of section 28, township 18 south, range 22 west, which deed was recorded on the 1st day of January, 1923, and appears of record in record book 56, at page 236 of the deed records of Columbia County, Arkansas, a copy of which is hereto attached, marked Exhibit J, and made a part hereof. (21) That on the 28th day of December, 1922, A. J. Marsh executed a deed to Joe Joiner, covering the west half of northeast quarter of section 28, township 18 south, range 22 west, which deed was recorded on the 1st day of January, 1923, and appears of record in record book 56, at page 235 of the deed records of Columbia County, Arkansas, a copy of which is hereto attached, marked Exhibit K, and made a part hereof.

"It is especially agreed and understood that, notwithstanding it is agreed that the matters set forth herein may be considered as evidence in the trial of this cause, exceptions for incompetency, irrelevancy and immateriality are specifically, separately and severally saved as to each of the statements and as to each of the exhibits herein, and that said exceptions shall be preserved as a part of this agreement.

"This the................day of June, 1927."

At page 32 of the transcript is a State donation deed from Paul M. Cobbs to George Crouch, covering the land in controversy. Pages 34-37 inclusive cover the proceedings in the Columbia Probate Court, wherein the land was sold to R. L. Emerson as the property of George Crouch, deceased.

Page 38, Exhibit 6, shows the payment of taxes by George W. Crouch for the years 1886-1897 inclusive, and in 1898 by W. W. Souter as administrator; in 1899 by R. L. Emerson; 1900-1919 by R. L. Emerson, A. W. Davies, and estate of R. O. Emerson; 1920-21 by W. W. Sorrels, A. W. Davies and the estate of Donan Emerson Thomas; 1922 by Joe Joiner; 1923 and 1924 by Sorrels and others.

The material facts in this case are identical with the facts in the case of *Wilson* v. *Chisholm*, 157 Ark. 418, 248 S. W. 273, and it would serve no useful purpose to set them out more fully here, and we will simply call attention to what the appellant claims is the difference between the facts in this case and the case of *Wilson* v. *Chisholm*.

Appellant contends that this differs from the Wilson-Chisholm case because Crouch had possession only 14 years, and died, and that there is therefore no continuous possession. The undisputed proof, however, is that Crouch took possession of the property under a donation deed from the State, made improvements, and actually occupied the land until the time of his death, which was about 14 years from the time he took possession, and that he paid the taxes all this time. After his

death, in 1899, the property was sold under an order of the probate court by the administrator of Crouch's estate, and was purchased by the parties alleged in appellee's complaint, and that appellees became the owners by proper conveyances from the persons who purchased at the administrator's sale.

It is admitted by appellant that the taxes were paid by Crouch and those claiming under him, from 1886 to 1924 inclusive, except taxes for the year 1922, which were paid by appellant. Practically the same questions of law were raised in the case of *Wilson* v. *Chisholm* as are raised in this case. In fact, the appellant contends that the material difference is that Crouch himself did not pay the taxes for the 38 years, but that he only paid for 14 years, and that his possession did not continue. But, if the presumption of redemption be indulged, as it was in the case of *Wilson* v. *Chisholm,* then this distinction, if there be any distinction, is immaterial. The appellant does not claim to have ever had possession of the property. There is no claim of possession by anybody except Crouch and those claiming under him; no taxes were paid by anybody during the entire 38 years, except for one year, and this case is so nearly identical with the case of *Wilson* v. *Chisholm* that we think it is clearly within the rule announced in that case.

In that case the authorities were reviewed, and it is wholly unnecessary to review them again. We simply call attention to the authorities and reasoning of that case, and hold that this case is governed by that. The court there said, among other things:

"The only question presented by this appeal is whether the presumption will be indulged that the land was redeemed from the overdue tax foreclosure for the taxes of 1869 and 1870 by James M. Owen or his successors in title. Appellants take the position that James M. Owen and his successors in title had no right to redeem the land, because they acquired no interest therein under the donation certificate and the donation deed made pursuant thereto."

The appellant here makes exactly the same claim as was made in the above case. The court further said:

"The case of *St. Louis Ref. & Wooden Gutter Co.* v. *Langley*, 66 Ark. 48, 51 S. W. 68, is cited in support of their contention that they acquired no interest whatever in said land under said certificate and deed. That case does hold that the State, by purchase at such sale, acquired no title which the State Land Commissioner had power to convey until after the redemption period expired, and that, during the pendency of the overdue tax suit, the Commissioner of State Lands had no authority to issue a donation certificate and deed based upon a foreclosure of land for the nonpayment of taxes; and also that after-acquired titles had no application to conveyances made by the State. It is true that James M. Owen and his successors in title acquired no interest in the land as against the true owner under the donation certificate, but it served the purpose of showing that he went into possession of the land in good faith, and not as a squatter or mere trespasser. His possession and claim of title in good faith constituted such an interest in the land as gave him a right to redeem the land from the sale in the overdue tax foreclosure against any one other than the true owner."

The decision of the chancellor in this case is not only in accord with the principles announced in the case of *Wilson* v. *Chisholm*, but it is in conformity with the principles of justice and right. When one has purchased property from the State, taken possession, and made valuable improvements in good faith, occupied such property for many years, and paid the taxes thereon, it would be manifestly unjust to deprive him of the property, if there is any ground for indulging the presumption that there has been a redemption.

The decision of the chancellor is not only in accord, as we have said, with the principles announced in the case of *Wilson* v. *Chisholm,* but in conformity with the principles of equity, and is therefore affirmed.